Green, J.
delivered the opinion of the court.
This is an action of trespass on the case brought by the defendants against the plaintiff in error. The declaration alleges that the plaintiffs below were in possession and the owners of a certain vessel called a wharf-boat, of great value, lying in the Mississippi river at the public landing near the town of Memphis, and that the defendant, then and there being possessed of the steam-boat Wm. L. Robeson, and having said boat under his care and management, took such bad care of his said steam-boat that through his carelessness, mismanagement and misdirection of said steam-boat, she ran foul of and with great violence struck against plaintiffs’ said wharf-boat, whereby she was broke and totally wrecked, and thereby goods, wares and merchandize to a great value were wholly lost, to their damage eight thousand dollars. To fhisdeclar. *531 ation there was a plea of “not guilty” and issue. The cause was tried and a verdict for the plaintiffs was found, which-was set aside and a new trial awarded. The defendant then, by leave of the court, pleaded two additional pleas, which state in substance that the wharf-boat mentioned in the declaration was not built for the purpose of navigating the Mississippi river, but was stationary and used as a dwelling-house and store-house, wherein to retail steam-boat stores, spirits, provisions and merchandize to all 'persons wishing to buy; that the said boat at the time mentioned in the declaration, and for a long time before, had been confined to the east bank of the Mississippi river, opposite the town of Memphis, for the purpose aforesaid; that the bank where said boat was confined had been dedicated by the proprietors and owners of the land to the public as a public landing; that said wharf-boat was of the length of one hundred feet and of the breadth of thirty feet, and was kept confined to said landing by cables and spars permanently for the purpose aforesaid, by means whereof the citizens aforesaid could not pass and repass and navigate with their vessels in and along that side of the river and common highway as they were before used to do, and still of right ought to do, without danger, to the great damage and common nuisance of all citizens navigating said river. And the injury to the said wharf-boat was sustained by reason of its position so unlawfully in the stream, and by reason that the Wm. L. Robeson, without the orders and against the will of the defendant, in attempting to round to to effect a landing above said wharf-boat, was driven up against the plaintiffs’ wharf-boat without any intention of the defendant to injure the said boat of the plaintiffs, and in the exercise of his lawful right to navigate said stream.
To these pleas the plaintiffs replied that said wharf-boat was erected by the license and permission of the corporate authorities of the town of Memphis, and was kept as a wharf-boat for the landing and convenience of loading and unloading steam-boats and other water craft passing up and down, the river; that a bar had formed by the gradual accumulation of alluvial soil on the east side of said river in front of *532 the town of Memphis, extending from the mouth of Wolt river, above said town, to a point below said landing, where said wharf-boat was erected and situate, which obstructed and prevented steam-boats and other large water craft from landing with safety or convenience; that said wharf-boat was fastened and permanently seeured to the bank, and anchored in the edge of the water of said river; was a fine wharf and landing for steam-boats and other craft navigating said river, without which steam-boats could not make a convenient landing at the point where said wharf-boat was fastened; that said wharf-boat did not in the least degree injure the navigation of said river, or obstruct the free passage of steam-boats and other water craft; that said wharf-boat extended no further in the river than to the deep water, or than it ought to go for public convenience, and that the river at that point is one mile wide. The plaintiffs say the defendant, without the cause mentioned in his said pleas, but negligently in landing the Wm. L. Robeson, did commit the injury complained of against him, &c.
To this replication the defendant demurred, and for causes assigned the following: First, that the replication is double; second, it is uncertain; and third, that it is argumentative and contains no traverse to the pleas.
The demurrer was overruled and the cause was tried before a jury, who rendered a verdict for the plaintiffs of four thousand dollars. A motion was made for a new trial and overruled, and an appeal in error prosecuted to this court.
It is insisted by the defendant’s counsel that the plaintiffs’ wharf-boat which was destroyed was a nuisance, and that the defendant was not bound to take the same care to prevent his boat from running foul of and destroying it that he would have been required to take' to prevent a like destruction of other water craft lawfully in the river.
This question is made in the defendant’s second and’third pleas, and had issue been taken on them there would have been some difficulty in its decision. There is, so far as we are advised, an entire absence of authority upon the point, but upon principle it would seem that though a man may pot willfully destroy the property of another, although it be *533 a nuisance, yet he should not be held to so strict an accountability for its unintentional destruction as would be visited upon him for a like destruction of property in the lawful use and possession of its owner. But the replication of the plaintiffs avoids this issue and alleges that his wharf-boat was not a nuisance; because although it was in the Mississippi river, yet it did not obstruct the navigation thereof, but on the contrary was of great use and benefit to said navigation by furnishing the means of landing and loading and unloading steam-boats and other water craft at Memphis, when, by reason of a sand bar at said landing, steam-boats could not conveniently land.
The question is thus raised whether the plaintiffs’ wharf-boat was a nuisance or not. A nuisance is any annoyance, hurt, inconvenience or damage. 3 Bl. Com. 216: 4B1. Com. 167. The erection of a wharf-boat would often become a nuisance if it were not for the countervailing benefits afforded by it; for if it essentially impair the public easement in a stream it is a nuisance. 3 Kent’s Com. 332. But whether the erection of a wharf-boat be a nuisance or not, is a question of fact which must be left to the jury. 3 Kent, 430: The King vs. Russell, 6 Barn, and Cress. 566: 13 E. C. L. R. 254. For if the navigation be not impeded by such erection it can be no injury to the public, and therefore would not be a nuisance. So if the public advantage greatly overbalance any slight inconvenience that may be produced, it is no nuisance. Ang. on Tide Water, 129, et seq. 13 Eng. Common Law Rep. 254. In the case of The King vs. Russell (L. Barn. and Cress. 566,) it appeared the defendants were the owners and occupiers of a coal mine at Wall’s End, on the north side of the river Tyne. For the purpose of shipping their coals they had caused to be erected two staiths. These erections consist of piles (technically called geers) driven into the bed of the river, on the top of which a platform or rail-way is" laid. The coal wagons pass along this rail-way, aná at the end are lowered by means of a machine called a drop, into the hold of the vessel. The coal is there deposited and the wagons raised up again by the 'machine and placed on the rail-way. One of these staiths ex *534 tended nearly one hundred and fifty feet and the other one hundred and thirty feet from high water mark into the river, and each of them extended a few feet beyond low water mark. The drops when let down extended forty feet further, and ships when taking in their cargoes were, obliged to lie at that distance from the staiths; but the drops when drawn up did not occasion any obstruction to the navigation. When ships are not laden at staiths the coal is first taken on board of small craft called keels, and cast by hand from the keels into the ships. When ships are laden in this manner they generally have a keel lying at each side, and they occupy a greater space in the river than when laden by means of the staiths and drops, and their cargoes cannot be put on board in less than double the time. The expense of shipping coal in this manner is greater and the coal is in worse condition than when shipped by means of the staiths. It was proved that the staiths indicted occasioned, at particular times of tide, a considerable obstruction to small craft navigating against the stream, and for some time before and after high water occupied a considerable space which would otherwise be navigable by large vessels; but if there were no staiths the number of keels used on the Tyne would be greatly increased, and the river would be very much crowded with them.
Holroyd, J. said: “Ships must lie, if not at the staiths, in /the channel of the river with their loading keels. So in other trades the ships lie at the wharfs or elsewhere in the river or port to load and unload, and their obstruction to others is lor is not, as well as the erection of the wharf itself, a nuisance to the navigation, in like manner as the staiths or geers themselves, in the coal trade, are or are not nuisances according to circumstances. Whether they are so or not is dependent upon circumstances, and it is therefore, according to Lord Hale, a question of fact for the jury.” As the jury had found that these staiths were no nuisance a new trial was refused.
This case is much stronger than the one now before the court. The staiths were erected for the private benefit of the owner, and actually obstructed to some extent the navi *535 gation of the river, but they were of great public benefit and therefore were no nuisance.
In this case the replication alleges that the navigation of the river is not obstructed, and that although the wharf-boat was erected for the private benefit of the owners, yet the public advantage was greatly promoted. When a great public benefit results from the abridgment of the right of passage, the great public benefit mates that abridgment no nuisance. It was therefore a question for the jury to say from the facts of the case, first, whether there was any abridgment of the right of navigating the Mississippi river by the erection of this wharf-boat; and if there was such abridgment, whether there was such public benefit as to constitute that .abridgment no nuisance. We think the evidence supports the replication, and had the charge of the court been unexceptionable would have justified the jury in finding the verdict they have rendered in the cause. But we think his honor misdirected the jury in that part of the charge in which he says that “if the defendant expressly or by implication assented to the establishment of the boat at the place where it lay, he could not defend himself from the consequences of having negligently destroyed it together with the goods and property on board, by now asserting it to be a nuisance, whatever it might be so far as the public was concerned. His using the boat as a place of landing and procuring supplies, &c. would raise a' presumption of his assent.”
*We do not think that the assent of the defendant to the erection of a nuisance in the river would take away his right to abate it afterwards if he thought proper. And it was certainly going too far to say that his landing at and procuring supplies from this wharf-boat raised a presumption that he had assented to its unlawful erection. But it is said this charge was uncalled for, and that the evidence would have authorized the verdict if it had not been given, and therefore the court should not reverse the judgment. This is not the character of cases for the application of the principle here contended for. In this case the question of nuisance or no nuisance is an inquiry for the jury. They must find *536 from the proof what is the fact. But we cannot know - whether they considered or acted on the evidence in relation to that question; certainly upon the charge above quoted they would have been authorized to find the same verdict by finding the fact that the defendant had “landed at this boat and procured supplies.” It may be, therefore, that the jury were misled by the charge of the court, and that they did not consider the evidence in reference to the true issue; and this was most probably the case*, as it would have shortened and greatly simplified their investigation. Although, therefore, we think the evidence would have justified the verdict, still we cannot support it without ourselves becoming judges of the fact.
As to the special causes of demurrer to the replication, it may be observed that there is no duplicity in it. For although there are several distinct facts stated, yet they do not constitute distinct- answers to the pleas, but all tend to show that although the boat was in the river as stated in the pleas, yet it was there under such circumstances as showed it to be no nuisance. But if there are any facts that do not tend to that point, (such as the corporation license, &c.) they are not answers to the pleas, and therefore are to be disregarded. We think the replication is well pleaded, and that the demurrer was properly overruled. I Chitty, 556-7, 501-2.
Let the judgment be reversed and the cause remanded for another trial.